First case is 20-9005 Seminole Nursing Home v. Commissioner of Internal Revenue. Mr. Luby, are you ready to proceed? Yes, Your Honor. Good morning, Your Honors. David Luby on behalf of Seminole Nursing Home. May it please the Court. Your Honors, this case raises a question of first impression within the Tenth Circuit concerning the application of Internal Revenue Code Section 6343A1D and whether its economic hardship relief provisions apply to corporate and other non-individual taxpayers. Section 6343A1D provides that the IRS shall, which in the Tenth Circuit indicates a mandatory intent, release a levy upon all property once the IRS determines that such levy is creating an economic hardship due to the financial condition of an individual taxpayer. Although the statute itself sets forth no limitation on the term taxpayer, the IRS's current position is that only individual taxpayers may suffer economic hardship. That position is memorialized in Treasury Regulation 301-6343-1B-4i, which provides that a levy creates an economic hardship due to the financial condition of an individual taxpayer if the satisfaction of that levy, in whole or in part, will cause the individual to be unable to basic living expenses. Thus, the government believes that only individual taxpayers qualified for the economic hardship relief provisions better set forth within the statute, even if an all-source levy is present on a corporation, which prevents it from having access to any of its funding. Now, Seminole challenged this regulation on the grounds that it was contrary to the unambiguous terms of the Code and constituted an impermissible construction of the term taxpayer, as used within the Code section. The tax court rejected those arguments on the grounds that it found that the term taxpayer was ambiguous within the Code section, such that the limitation on economic hardship relief solely to individual taxpayers was a permissible construction of the statute. Am I getting an echo or someone else? I don't want to interrupt someone else. Counsel? Yes. It may not be the term taxpayer that's the focus here, but the term economic hardship and what it means in this context and how a business could suffer economic hardship in this context. How would you define economic hardship for a business? I would define economic hardship as being unable to pay their basic operational necessities. So if there's a levy, an all-source levy, like for example, in Seminole nursing home case, their nursing home, the levy that's issued would attach to their bank accounts, their account receivables, their Medicare and Medicaid funding, their essential business property, and any private pay insurance or private pay coming from the actual residence of the nursing home. So I would define economic hardship in a very general and broad way, which is what I believe Congress intended by saying that it was either a corporate or individual taxpayer that was suffering from or about to suffer a probation of material wealth and resources that would prevent them from meeting those needs. Counsel, wouldn't that suggest that whenever there is a levy applied to a corporation, they're going to have economic hardship and therefore it should be released? I don't think it would be in every situation, Your Honor. I think just like an individual taxpayer, the IRS can prescribe the necessary factors to demonstrate what economic hardship would be in order to qualify under the statute. So it wouldn't just be an automatic release. We think that just like an individual taxpayer has the opportunity, a corporate taxpayer should also be able to show the IRS that if the levy is not released, even partially, that it would prevent them from meeting those needs in such a way that would cause them to be forced into foreclosure or receivership, which I did not believe was the inherent intent behind the statute. Congress afforded both corporate and individual taxpayers the opportunity to basically apply for that relief. And when you look at the term taxpayer, it's not an ambiguous term like the tax court found. It's defined within the code section. But getting back to hardship, regardless of the extent of the levy, if a taxpayer is not paying their taxes, it can only be either they can pay them and they're evading or it would be an economic hardship for them to pay. Isn't that true? I don't think it would be a situation where the corporation would be evading. I think, once again... Let's not get distracted by that. What I'm saying is that, isn't it true whenever there's a levy on a corporation, there's going to be a hardship and the statute doesn't say what degree that hardship should be. Isn't that correct? The statute does not, which is what the IRS has the authority under the statute to promulgate the regulations as to what would constitute economic hardship for both corporate and individual taxpayers. But when you look at the regulation, they decided to restrict the statute in a way that Congress didn't. Okay, let's get back to, as Judge Hart's directed our attention, the word hardship and the two words economic hardship. Isn't there going to be some degree of economic hardship when any levy is applied? I think it's possible. I think it depends on the factual circumstances of the corporation. You mean a corporation is going to have a levy applied on them? It's only going to happen when they haven't paid their taxes? And they're not paying their taxes. I can't imagine a circumstance where they're not paying their taxes because there's an economic hardship to do so. Well, normally in those situations, if a corporation is falling behind to the point where they're being levied, they're probably in a negative cash flow situation. Yes. They're in an economic hardship. Yes. And in that situation, if the IRS comes in and puts an all-source levy on whatever available funding they do have, would create a situation where they wouldn't be able to pay any of the current taxes they owed, their payroll, utilities, insurance, and all the other operational necessities, especially in the case of a nursing home, which still has to care for its residents, even though it has these other obligations under state and federal law. But they haven't paid their taxes. If they haven't paid their taxes before any levy is paid, they're already in an economic hardship, right? Well, that's certainly possible. Now, when you look at the specific facts here of a corporation, well, in terms of like Seminole Nursing Home, for example, being a nursing home, they're subject oftentimes to recruitment, recoupments from Medicare and Medicaid. And the state and federal governments obviously set the rates on how they get reimbursed. So a lot of times there are delays in receiving all of your account receivables. And then you have to make a determination as to what gets paid, because they still have a duty to the nursing home residents to be able to provide for their medicines and linens and food. So in that situation, the first thing to be paid by a corporation in that circumstance be the employment taxes, because they're subject to... I think that depends though, because if you have, if you're caring for, let's say 100 nursing home residents, and they have to be fed, and you have to provide the appropriate health care to them, and having certified people on staff, having doctors, I think you have a duty to those people prior to paying the IRS. And once you care for the residents, then what's left over, then would go to the IRS in that particular situation. What you're saying though, is the people who supply the goods and services to take care of residents shouldn't get paid. You're taking care of the residents, and that involves various expenses under the tax code. I think in terms of the priority of creditors, taxes come before everything. And yet now you're saying you don't have to pay your taxes as long as you have these other expenses that have to be paid. Your operational necessities, I think you referred to. But your number one operational necessity, and this is, I think, reflected in the tax code, is paying your taxes. Isn't it? Well, I wouldn't disagree with your honor's interpretation. I think certainly every corporation has a duty to pay the taxes that are required by law. But what I think is happening here though, is that the IRS has substituted its own judgment for that of Congress by including a restriction that the statute itself does not contain. So they made a choice to alter the statutory language to restrict it to individuals. And when you look at the term economic hardship... They did so on their interpretation of what the words economic hardship meant and to whom they apply. But that would mean that they're substituting their judgment in that scenario. Let me tell you, follow up on what Judge Hart is saying, is that if the IRS does not come first, that means that any economic hardship is being financed by the government if they don't pay their taxes. Isn't that true? I think that's true to a certain extent. But when you look at the code section, for example, when dealing with corporations, they're also allowed to submit offers and compromise. And they often do so on grounds where dollars to collectability or dollars to liability. So for example, if they owe employment taxes to the point that it can't be collectible, they can submit an offer and compromise. A lot of times the IRS will accept those and settle those tax liabilities for less. And so they're still affording corporate taxpayers relief from employment tax and other scenarios. And so when you look at the economic hardship definition, that's a non-defined term. But in those circumstances, it's not the hardship that's the important consideration. It's maximizing the payment of taxes. So the government will reach agreements with people so that they can pay taxes. Maybe not all of it, but it reduces the government's costs in collecting the taxes. And those are the considerations that go into that sort of compromise. That's not a compromise because of the dire straits of the taxpayer so much as this is the best way for the government to get the most money at the least expense, isn't it? Well, it's true, your honor, but they do look at the reasonable collection potential of the corporation. So if the corporation doesn't have the economic assets, let's say it's a million dollars and they settle it for 200,000, you're right. The government's trying to get as much money as it can immediately, but they're still offering corporations the opportunity to settle those taxes for less. So to say that the employment tax scheme is somehow thwarted by just giving a corporation the opportunity to demonstrate economic hardship, to see if they do qualify for that relief. I think the IRS, when they were promulgating offers and compromised the regulations, they actually included factors under which a corporation could suffer a hardship, but decided at the last minute not to actually adopt those. But the IRS is certainly capable of determining what would constitute economic hardship. And we don't feel that, I mean, that's a non-defined term within the code. And we don't believe that those provisions are necessarily inescapably ambiguous that would cause the court to resort to legislative history, to look at a statute like section 7122, because when you look at what the tax court did, they went to 7122 and based the ruling on the regulations under that statute, what deals with offers and compromise. And when you look directly at that statute, Congress restricted it in a way that it did not do under 6343A1D by including the term basic living expenses, which can only apply to individual taxpayers. And so in that situation, Congress decided to make that restriction, where they did not do it under 6343A1D. But I don't think we're looking at legislative history here. We're looking at the structure of the tax code. We're looking at the whole system and saying, here we've got someone who can't pay taxes. And in the other context, the IRS is the first creditor. It gets first dibs at the money. And you're saying as long as the other operational expenses aren't paid, can't be paid, then the taxpayer is suffering economic hardship and shouldn't have to pay. That's in the opposite direction from the entire thrust of the code in these circumstances, I would think. But we're certainly not advocating that taxes shouldn't be paid or they should have a release from them. We're certainly saying they should have the opportunity to demonstrate economic hardship relief. And if they can't demonstrate it, then so be it. But the code is not restricted in the way that the IRS has interpreted it. And so we feel that when you look at the tax court's ruling, though, they did rely upon legislative history. They looked at the legislative history of 6343. And they looked at the legislative history of 7122. Mr. Luby, before your time runs out, I didn't understand your argument why 6343E is not an indication that this provision is directed only towards individuals. I didn't understand your argument. So I think when you I'm sorry, your honor. I think when you look at 6343E, that was an amendment to the statute passed by subsequent Congress in order to correct a timing issue with respect to an individual taxpayer's wages. So when the tax court looked at whether or not the term taxpayer was ambiguous, they honed in on E to say that the whole word is inambiguous. So we have to go to step two to determine whether or not the regulation was a permissible construction of the statute. We're asserting that there's nothing in that amendment that in any way, shape or form overrides the general definition of the term taxpayer to include corporations under 6343A1E. That was just to correct the timing issue because the IRS would levy one period's worth of wages from a taxpayer, even though they knew that the tax was not collectible at that point. So I think one, the Congress wanted to correct that interpretation, but it doesn't mean that Congress intended to override corporate taxpayers being able to utilize the economic hardship relief provisions. But it did invoke Congress's attention on the regulation and the statute and the fact that the regulation referenced only individual taxpayers. Didn't it do that? I think that in terms of the statute, the amendment, when you're dealing with an individual's wages, but that was the sole purpose there. Look at the individual, their reasonable basic living expenses, but only with respect to a levy on their wages. It didn't say that restrict the whole relief, I think to just the individual taxpayers in that scenario. So they made one correction, but they didn't go back and do what you would think would be a correction. And that has changed the regulation generally. So it applied both to all taxpayers as defined in another part of the code. Correct. They didn't do that. Well, correct, Your Honor. That's our interpretation. If Congress has the opportunity and the focus to make a correction, and they don't do that, then that means they intended no correction. Yes, I would agree with that. Yes, Your Honor. It looks like I'm out of time. Yes, you are. Sorry. That's our questioning, not your fault. Ms. Lyon, are you ready to proceed? Yes, thank you. And may it please the court. My name is Kathleen Lyon, and I represent the commissioner. Seminole Nursing Home asks this court to rule that it is eligible for economic relief from a proposed IRS levy to collect unpaid employment taxes, including trust fund taxes that Seminole withheld from its employees' wages and unlawfully used for other purposes instead of paying them over to the government. Such relief, however, is properly limited to individual taxpayers in Treasury Regulation 301-6343-1B41, and the tax court's order and decision should be affirmed. Section 6343-A1-D is at least silent or ambiguous regarding whether economic hardship relief from levy extends to non-individual taxpayers, such as Seminole. In this case... Counselor, why... Yes. If that's the case, why wouldn't Congress have made it clear in the statute that taxpayers do not include corporations when almost every place else they use taxpayer, it does? Well, Your Honor, the statutory terms, including taxpayer, cannot be read in isolation, and you have to, we think that Congress's intent here is best seen in the surrounding language in the provision. The canons of statutory construction are clear that you have to look at the specific context in which taxpayer is used and the broader context of the statute as a whole, and it's with a view to its place in the overall statutory scheme. And for example, to go back to 6343-E, we know that it's the surrounding language that refers to salaries and wages that determines the reach or operation of 6343-E and not the definition of taxpayer in that case. It's very clear in 6343-E that individuals are the taxpayers being referenced. Now, we... only individual taxpayers are involved. Doesn't that make, doesn't that underscore that the elsewhere taxpayer is broadly, still broadly defined? No, I think it underscores that it's the surrounding language that you have to look at. Seminole wants you to, believes that the analysis begins and ends with the definition of taxpayer. It didn't in 6343-E, and we don't think that it does in 6343-A1-D, because Congress didn't define economic hardship or provide guidance on what it means, and it left it to the Secretary to draw those lines. And we think that Congress very likely meant economic hardship in the sense that contemporary dictionaries used that term. We've laid out a fairly extensive analysis there at pages 34 to 42 of our brief, and the dictionary definitions overwhelmingly point to hardship as a subjective human experience. I mean, certainly businesses can have financial difficulties and paying their debts, and if they don't pay their debts, they can go into bankruptcy. We don't ordinarily refer to that as being, as experiencing suffering or privation. And so... Maybe I should direct your attention to the precedent of this court, if you don't seem to be familiar with it. Sinclair Wyoming Refining Company versus USEPA. That's 887 Federal Reporter 3rd, 986, where this court interpreted the language economic hardship as applied to Sinclair Refining Corporation, certainly a business. Given that precedent and our statement that the natural interpretation of that included inconvenience, I can't remember the exact language. Somebody else may have it handy, but it was certainly applied to a company, not an individual. And it was not... It didn't talk in terms of... We didn't speak in terms of deprivation of the type you're talking about. And that was... I'm not familiar, but that was not a tax case, is that correct? You're right, it was versus EPA? But when you said, in general, the notion economic hardship is not something you think of as applied to companies, we applied it to a company a little over three years ago and gave a natural definition of the term. Maybe I can find that. No. Well, it rejected the notion... We rejected the notion that that required long-term... That there had to be a threat to the refinery's long-term viability. It certainly wasn't the sort of deprivation you think the term is limited to, and it wasn't limited to individuals. So I think to the extent that your argument is a semantic one, saying this language, economic hardship, should not apply to companies, I think that's undermined by our decision in Sinclair. Well, Your Honor, I think that even as we've said in our brief, that while the dictionary definitions, we think overwhelmingly, the contemporaneous dictionary definitions, and I don't know what that was when the EPA statute was enacted, what that might have meant, but the dictionary is contemporaneous to the enactment of this statute of 1988, that even if some secondary or third-level meaning of hardship could possibly include non-individuals, it's at least ambiguous as to Congress's intent here when the great weight of definitions pointed to human suffering. And we think that dictionaries don't compel Seminole's interpretation. And where the statute is ambiguous, you know, this court, and I would remind the court that the Congress didn't define economic hardship and left it to the Secretary to draw those lines. And we think that when the statute is ambiguous, this court favors the interpretation that doesn't lead to a result that Congress is highly unlikely to have intended. And I think you've addressed some of the questions earlier, have addressed some of the results that Congress is highly unlikely to have intended. First off, and Seminole is the perfect example here, when you have these employment taxes and you have a company that is making a self-executed loan to itself at the expense of the public fist, the public fist, you know, essentially becomes a bank and the IRS is the loan officer. We have also pointed out in our brief, there are many cases showing that the government can't be made an unwilling partner in a floundering business. And it would be highly unlikely for the, for the government to, for Congress to have made the government be in a position to subsidize failing businesses. And in particular, we think it's highly unlikely given the statutory scheme and given the priority that tax collection gets, that the government would have, that Congress would have subordinated the government's position to third-party creditors. And I think if Congress had intended such a dramatic departure from the collection scheme, I think it would have explained itself better, we think. With respect to, and getting to Chevron step two, assuming this court agrees with us that the statute's ambiguous, we think this is a plainly permissible, permissible construction of the statute for the reasons I've essentially just noted, that we think it is consistent for the secretary to have defined the regulation as applying to individuals, partly because it's consistent with the dictionary definitions of a hardship or the, the weight of those definitions. It avoids subsidizing failing businesses. It avoids creating these perverse incentives for how businesses may arrange their financial affairs in order to avoid tax collection. It avoids upending the employment tax statutory scheme. And I want to address a couple of points. Before you do, could you be more, why is it that 6343E, as it now exists, is at least a suggestion that Congress intended the word taxpayer in the statute generally to refer to only individuals? I don't think that that's the best focus here. I don't think you have to get into, the secretary was not redefining what taxpayer means, the secretary was determining what economic hardship means. I'm asking what, tell me why you say 6343E suggests that the general definition of taxpayer in this statute is referring to individuals only. What we have said is that the definition of taxpayer is not determinative of the question before this court. We're not trying to necessarily redefine taxpayer or narrow. We're saying that Congress, using its own language, has narrowed the effect or the reach of... Why does 6343E help your position? Let me put it that way. 6343E helps our position because it underscores that it, that the term taxpayer can't be seen in isolation and it's the surrounding language that affects the reach of that provision. It's reference to wages and salaries which can only be experienced by individuals that establishes the reach of that provision. And of course we know what wages and salaries mean. We don't know what economic hardship means because Congress didn't define it and left it to the secretary. But we think that is that surrounding language, economic hardship, that's going to define what the reach is of the provision, whether it reasonably reaches, whether given that it's ambiguous, you then look at whether the secretary engaged in a permissible construction. Will 6343E help you in that regard? I don't understand. I thought you thought that 6343E helped you in your more limited application of economic hardship. Well, I mean, yes, in the sense that that provision does apply only to individuals. But we think that it is, it just underscores the fact that that terms can't be read in isolation. You have to look at the whole provision and that whole provision I think makes it clear that you're dealing with individuals. And in 6343A1D, Congress did not tell us precisely what it meant by economic hardship and left it to the secretary. And so it's at least ambiguous. And so then you get into Chevron step two and examine whether it's a permissible construction. And we think that it plainly is for the reasons that I've already stated. I want to address a couple of questions which opposing counsel brought up earlier and lays out a page 14 of its reply brief. Seminole says that interpreting 6343A1D to include non-individuals would not completely thwart the employment tax scheme because the IRS can always collect employment tax debts or other tax debts through installment agreements and offers and compromise. In other words, we understand Seminole to be saying it doesn't matter whether a business would be collect through installment agreements and offers and compromise. We want to point out that installment agreements and offers and compromise are voluntary. The IRS cannot force anyone to propose one or to enter one. And so preserving the IRS's ability to collect even aggressively is a vital importance here. And Congress left it to the secretary to engage in line drawing here and it did. We think it was plainly permissible to do so. And finally, I would point out the choice here is not between economic hardship relief from levy or no possibility of relief at all. Again, there are other options for resolving a business's tax issues, whether it's installment agreements or offers and compromise. As a practical matter, businesses do raise their financial issues in a CDP hearing in the balancing test under 6330C3C where appeals has to consider whether the intrusiveness of the proposed levy outweighs the government's need for collection. And that will always depend on the unique facts of a case. And although we think that appeals can't be required to deny a levy based on the financial condition of a business, the balancing test is where it can deny a levy where intrusiveness would outweigh the government's need to efficiently collect taxes. Seminole had an opportunity to do this on remand when the tax directed appeals to look at the balancing test again in light of Seminole's updated financial situation. And Seminole declined to participate or to show its financials. And Seminole doesn't dispute an appeal that appeals, it doesn't dispute here that appeals came to the right determination on the balancing test on and if there are no further questions, I'll rest. Thank you, council. Thank you. Mr. Luby, you have no time left. So thank you both. Council submitted and council are excused.